# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

RONALD BURRELL,
ADC #86126                                                                                          PLAINTIFF

5:17CV00115-BRW-JTK

WENDY KELLEY, et al.                                                                        DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Billy Roy Wilson. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations.  The copy will be furnished to the opposing party.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.     Why the record made before the Magistrate Judge is inadequate.

2.     Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.     The detail of any testimony desired to be introduced at the hearing before the

1

District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## **DISPOSITION**

### I. Introduction

Plaintiff Burrell is a state inmate incarcerated at the Varner Unit of the Arkansas Department of Correction (ADC). He filed this pro se action pursuant to 42 U.S.C. § 1983, alleging deliberate indifference to his serious medical needs in violation of his Eighth Amendment rights (Doc. No. 2). Defendants Kelley, Lay, CCS, and Hobbs were dismissed on May 30, 2017 (Doc. No. 13).

Pending before the Court is the Motion for Summary Judgment, Brief in Support, and Statement of Facts, filed by remaining Defendant Estella Bland (Doc. Nos. 53-55). Plaintiff filed Responses in opposition to the Motion (Doc. Nos. 64, 65), and Defendant filed a Reply and Response to Plaintiff's Statement of Facts (Doc. Nos. 68, 69).

### II. Facts

Plaintiff alleged that he was diagnosed with peptic ulcers and gastroesophageal reflux disease (GERD) in 2008, and on June 9, 2012, Defendant Bland prescribed him Ibuprofen and

2

other medications. (Doc. No. 7, p. 5) Soon after, Plaintiff developed chest pains, heartburn, gas, abdominal pain, and nausea, and asked to see a free world specialist. (Id., p. 6). Plaintiff completed several sick call slips in April 2014, complaining of those symptoms, and Defendant Bland examined him on May 5, 2014. (Id., p. 8) At that time, she stated that she made a mistake by prescribing him Ibuprofen, but denied Plaintiff's request to see a specialist. (Id.) After Plaintiff was transferred to the Varner Unit in March 2015, he discovered that long term use of Ibuprofen caused and aggravated his ulcer and GERD conditions, and submitted a request to be treated for irritable bowel syndrome. (Id., p. 11) His requests to see an acid reflux specialist were denied. (Id., p. 12)

This Court previously granted in part Defendant Bland's Motion to Dismiss all Plaintiff's allegations concerning events which occurred prior to April 29, 2014, based on the three-year statute of limitations (Doc. No. 40).

**III.     Summary Judgment Motion**

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth

3

specific facts showing that there is a genuine issue for trial.'" Id. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

Defendant Bland states that Plaintiff's allegations against her should be dismissed for failure to exhaust his administrative remedies prior to filing his lawsuit, as required by the ADC grievance procedure, Administrative Directive (AD) 14-16 (Doc. No. 55-1, pp. 3-20), and the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e. Defendant presents the Declaration of Shelly Byers, ADC Medical Grievance Coordinator, who stated that Plaintiff did not file, appeal, or exhaust a medical grievance after April 19, 2014 (Doc. No. 55-1, p. 1). According to the grievance procedure, an inmate must first file an Informal Resolution, and if he is not satisfied with the response, he may then file a formal grievance. (Id.) Medical grievances are forwarded to the appropriate medical personnel for response, and if an inmate is not satisfied with the response or fails to receive a response, he may appeal to the Deputy Director. (Id., pp. 1-2) Based on this Declaration and the requirements of the grievance policy and the PLRA, Defendant asks the Court to dismiss Plaintiff's Complaint for failure to exhaust his administrative remedies.

In Response, Plaintiff states that he did file an emergency grievance naming Defendant Bland on May 16, 2014, and that it was assigned number CU 14-01099 by Lola Cantrell on May 16, 2014, but not treated as an emergency. (Doc. No. 65, pp. 22, 24, 30) Cantrell sent Plaintiff an Acknowledgement of receipt and indicated he would receive a response by June 23, 2014. (Id., p. 22) However, after Plaintiff was transferred from the Cummins Unit to the Varner Unit on June 17, 2014, he wrote Cantrell requesting an update on his appeal, and received a response stating

4

that the grievance was extended until July 17, 2014. (Id., pp. 23, 26) When Plaintiff did not receive a response on July 17, 2014, he wrote a letter to Dana Peyton and Grievance Officer L. Jackson on July 27, 2014, inquiring about the status of the grievance. (Id., p. 19) On July 29, 2014, he received a response from Peyton (dated July 17, 2014), denying his grievance. (Id., p. 31) Plaintiff then filed his appeal on July 30, 2014, which was rejected as untimely on August 7, 2014, and August 9, 2014 (Id., pp. 29, 35)

Plaintiff also complains that the ADC grievance policy fails to provide an adequate solution when an inmate does not receive a grievance response, because there is no section on the grievance form for appealing to the deputy director and because the policy requires that the inmate include the original grievance form, which he did not receive. He claims that at the time he needed to file his appeal, both the grievance form and health service response were still in the possession of Peyton. Based on the events which occurred and the faulty grievance policy, Plaintiff states administrative remedies were not available to him and that he should not be prevented from proceeding in his lawsuit .

Defendant rejects Plaintiff's arguments in her Reply (Doc. No. 68), noting that the grievance policy clearly provides a means by which an inmate is to file an appeal if he does not timely receive a response to his grievance. According to the policy, AD 14-16 (IV) (F) (8), if an inmate does not receive a response to his grievance within the time frame as stated on the Acknowledgement Form and/or the Extension Form, the inmate may move to the next level of the process, an appeal to the Chief Deputy/Deputy/Assistant Director within five working days. (Doc. No. 55-1, p. 12) In addition, the policy provides that the inmate is to include the original unit level grievance form and either the Warden/Center Supervisor Decision Form, the Health Services

5

Response, or the Acknowledgement of Unit Level Grievance if the inmate asserts he did not receive a response or extension within the timeframe. (Id., p. 13; AD 14-16 (IV) (G) (2)) Defendant notes that Plaintiff admitted that he possessed the yellow copy of his grievance (returned to him on July 2, 2014 by grievance officer Hall, Doc. No. 65, pp. 23-24), and the grievance extension form indicating he would receive a response by July 17, 2014. (Id., p. 26)   In addition, although Plaintiff complained that the grievance policy was not available to him while he was in ad seg at the Cummins Unit, Defendant presents the declaration of the Varner Unit law library supervisor, who states that the grievance policy is available for review in the law library, and that Plaintiff never requested to review that policy in June or July of 2014.   (Doc. No. 69-1)

   According to the PLRA,

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a), unconst'l on other grounds, Siggers-El v. Barlow, 433 F.Supp.2d 811, 813 (E.D. Mich. 2006). The courts have interpreted this provision as a mandatory requirement that administrative remedies be exhausted prior to the filing of a lawsuit.   In Booth v. Churner, the United States Supreme Court held that in enacting the PLRA, "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." 532 U.S. 731, 741 (2001).   In addition, the United States Court of Appeals for the Eighth Circuit held in Chelette v. Harris, "[t]he statute's requirements are clear: If administrative remedies are available, the prisoner must exhaust them. Chelette failed to do so, and so his complaint must be dismissed, for 'we are not free to engraft upon the statute an exception that Congress did not place there.'" 229 F.3d 684, 688 (8th Cir. 2000) (quoting Castano v. Nebraska Dep't of Corrections, 201 F.3d 1023,

6

1025 (8th Cir. 2000)). In Johnson v. Jones, the Court held that "[u]nder the plain language of section 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court....If exhaustion was not completed at the time of filing, dismissal is mandatory." 340 F.3d 624, 627 (8th Cir. 2003) (emphasis in original). Finally, in Jones v. Bock, the United States Supreme Court held that while the PLRA itself does not require that all defendants be specifically named in an administrative grievance, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." 549 U.S. 199, 218 (2007).

The PLRA requires "proper" exhaustion, which means "using all steps that the agency holds out, and doing so *properly*." Porter v. Nussle, 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Porter, 548 U.S. at 90-91. In addition, the PLRA "suggests no limits on an inmate's obligation to exhaust – irrespective of any 'special circumstances.'" Ross v. Blake, 136 S.Ct. 1850, 1856 (2016). In Ross, the Court ruled that those special circumstances involve three types of incidents in which administrative remedies are not available to an inmate: where it "operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates," or where the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use," or where the inmate is thwarted "from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1859-1860.

In this particular case, Plaintiff admits receiving the extension form stating that he would receive a response to his grievance on July 17, 2014. (Doc. No. 65, pp. 14-15) However, when he

7

did not receive a response on July 17, he waited until July 27, 2014 to send a letter inquiring about it. He also admits that he possessed the yellow copy of his original grievance and the July 2, 2014 extension form. (Doc. No. 65, pp. 3-4, 23).  The grievance policy clearly provides notice to an inmate that if he does not receive a timely response, he should appeal within five working days. (Doc. No. 55-1, p. 12)   The Court also does not find any evidence that any of the three situations cited in Ross as rendering a remedy unavailable, were present in this case.   And, Plaintiff does not claim that he was denied a copy of the grievance policy on request.   According to the Supreme Court in Woodford v. Ngo, 548 U.S. 81, 85 (2006), "[e]xhaustion is no longer left to the discretion of the district court."

Therefore, given Plaintiff's failure to timely appeal his grievance as provided in the ADC policy, the Court finds that his allegations against Defendant Bland should be dismissed, for failure to exhaust.

**IV.    Conclusion**

IT IS, THEREFORE, RECOMMENDED that Defendant's Motion for Summary Judgment (Doc. No. 53) be GRANTED, and Plaintiff's claims against Defendant be DISMISSED without prejudice.

IT IS SO RECOMMENDED this 8th day of February, 2018.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE